# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD SMITH, | ) | Case No. 1:25-cv-00153 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| ANNETTE CHAMBERS-SMITH, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Edward Smith, an Ohio prisoner incarcerated at the Grafton Correctional Institution, filed this action without a lawyer against six Defendants, including prison staff, employees of the Ohio Department of Rehabilitation and Correction, and an ophthalmologist from The Ohio State University.  He alleges violations of his federal civil rights under 42 U.S.C. § 1983 for, among other things, deliberate indifference, neglect, failure to provide medical care, and dereliction of duty regarding his cataracts diagnosis and treatment.  Plaintiff seeks declaratory, injunctive, and monetary relief.  The five Defendants associated with the Ohio Department of Rehabilitation and Correction move to dismiss.

## STATEMENT OF FACTS

On Defendants' motion to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff as the non-moving party, as it must in the present procedural posture.

A.      **Cataracts Diagnosis and Treatment**

Currently, Plaintiff Edward Smith is incarcerated at the Grafton Correctional Institution in Grafton, Ohio.  (ECF No. 1, ¶ 4, PageID #2.)  In June 2016, Mr. Smith arrived at Grafton Correctional, where an eye doctor diagnosed him with cataracts.  (*Id.*, ¶ 12, PageID #3.)  According to Plaintiff, the eye doctor determined that he did not meet the criteria for surgery "based on ODRC guidelines."  (*Id.*)  Further, the eye doctor told Mr. Smith that an eyeglass prescription "would not make a difference" regarding his vision quality or headaches and informed Mr. Smith that he would reevaluate the condition in a year.  (*Id.*, ¶ 13, PageID #4.)

Some time in 2017 or 2018, a second eye doctor at Grafton Correctional evaluated Mr. Smith and overruled the opinion of the first eye doctor.  (*Id.*, ¶ 14, PageID #4.)  The second eye doctor issued Mr. Smith a prescription to assist with vision and to alleviate headaches.  (*Id.*)  According to Mr. Smith, the prescription cost $150.00 and "did nothing to improve [his] condition."  (*Id.*, ¶ 15, PageID #4.)

In 2019, a third eye doctor at Grafton Correctional evaluated Mr. Smith and informed him that he would need cataract surgery in both eyes.  (*Id.*, ¶ 16, PageID #4.)  However, Plaintiff alleges that he "did not meet ODRC criteria for surgery at [that] time," but he was informed that he would be reevaluated in a year.  (*Id.*)  Further, the third eye doctor told Mr. Smith that glasses would not help his condition.  (*Id.*)

In January 2021, Defendant Dr. Julianne Matthews, an ophthalmologist at The Ohio State University, screened Mr. Smith for cataract surgery.  (*Id.*, ¶ 17, PageID #4.)  Dr. Matthews informed Mr. Smith that the doctors at Grafton

2

Correctional provided him with the wrong eyeglass prescription and that "with a proper prescription his vision was correctable to 20/20." (*Id.*) Based on this information, Mr. Smith purchased a new pair of glasses with the second prescription. (*Id.*, ¶ 18, PageID #4.) But he alleges that the second prescription was "worse than the prior GCI prescription" because his vision "when wearing them was completely blurred, and the headaches persist[ed]." (*Id.*, ¶ 19, PageID #4.) For this reason, Mr. Smith claims that he "wasted $150.00 on purchasing two useless pairs of glasses at his own expense." (*Id.*, ¶ 21, PageID #4.)

Because Dr. Matthews determined that Mr. Smith's vision was correctable to 20/20, Mr. Smith alleges that "no surgery could be done at that time," since 20/20 vision is "presumed not to need medical intervention by ODRC medical staff." (*Id.*) Mr. Smith claims that "an ODRC policy [mandated] that he had to wait a full year before he would be eligible to return to OSU for a second cataract consultation and surgery." (*Id.*, ¶ 23, PageID #5.)

### B.   Cataract Surgery

Mr. Smith alleges that one year after his January 2021 appointment at Ohio State, Dr. Matthews recommended that he undergo bilateral cataract surgery. (*Id.*, ¶ 24, PageID #5.) Dr. Matthews told Mr. Smith that ODRC would only perform surgery on one eye, and that he must "stick to his treatment recommendation until ODRC provided the required health care in both eyes." (*Id.*)

On October 5, 2023, Mr. Smith received successful surgery on his right eye. (*Id.*, ¶ 25, PageID #5.) However, he experienced a "greater imbalance in vision" following the surgery, with problems in his left eye and worsened headaches. (*Id.*)

3

Dr. Ferguson, an optometrist with the Ohio Department of Rehabilitation and Correction and a Defendant in this case, wrote three additional prescriptions between Mr. Smith's surgery and July 2024, with the intention of resolving Mr. Smith's eye problems without the need for further surgeries.  (*Id.*, ¶ 26, PageID #5.)  Mr. Smith claims that each of these prescriptions cost him $150.00, for a total of $750.00.  (*Id.*, ¶ 27, PageID #5.)  Plaintiff alleges that Dr. Ferguson, as well as Dr. Janice Douglas at Grafton Correctional and Ashley Burger, the healthcare administrator, were "acting in unison to deny treatment, just as the OSU Optometrist said they would." (*Id.*, ¶ 29, PageID #5.)

### C.     Denial of Second Surgery

On August 28, 2024, Dr. Ferguson evaluated Mr. Smith and told him that he required eye surgery in his left eye because his cataracts were causing a loss of vision and severe headaches.  (*Id.*, ¶ 30, PageID #5.)  He told Mr. Smith that glasses would not help his vision and that Mr. Smith should consult Dr. Douglas regarding his headaches.  (*Id.*)

Dr. Douglas held a follow-up appointment and passed Mr. Smith's information on to Ms. Burger.  (*Id.*, ¶ 31, PageID #5–6.)  Plaintiff alleges that Ms. Burger was informed of Dr. Ferguson's surgery recommendation, but notified Mr. Smith that "he would not receive the medically necessary surgery but would instead receive further monitoring."  (*Id.*)

On September 25, 2025, Dr. Ferguson told Mr. Smith that "the State decided not to authorize cataract surgery for the left eye," and that he would issue a prescription instead, despite earlier informing Mr. Smith that glasses would not help

4

his vision.  (*Id.*, ¶ 32, PageID #6.)  The same day, Ms. Burger took Mr. Smith's prescription and told him that she would follow up with him the next day about "why new useless prescriptions [were] being filled."  (*Id.*, ¶ 33, PageID #6.)  According to Plaintiff, as of October 11, 2024, Ms. Burger has not responded to this inquiry.  (*Id.*)

Mr. Smith claims that the delay and denial of service has "caused substantial pain and suffering, worsened [his] vision, [and] exacerbated his eye health to a degree that surgery will be more complicated and less likely to restor[e] full or normal vision."  (*Id.*, ¶ 34, PageID #6.)  He alleges that "Defendants denying [his] cataract surgery in the left eye . . . is a retaliatory act for complaints related to their medical neglect, and not because of any alleged hidden and/or undocumented one eye cataract surgery policy."  (*Id.*, ¶ 38, PageID #6.)  Further, Mr. Smith claims that this denial was part of a "pattern of retaliatory conduct by the Defendants against multiple inmates that goes back years" to "put cost savings over the health" of Mr. Smith.  (*Id.*, ¶ 39, PageID #6.)

## STATEMENT OF THE CASE

Based on these events, Plaintiff filed a *pro se* complaint, asserting claims against each Defendant in both their individual and official capacities under 42 U.S.C. § 1983.  (*Id.*, ¶¶ 5–10, PageID #2–3.)  Specifically, Plaintiff alleges that Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction, Warden Jerry Spatny, assistant healthcare administrator Ashley Burger, Dr. Douglas, the physician administration at the Department, Dr. Ferguson, and Dr. Matthews each acted with negligence and deliberate indifference regarding either

the policies or medical treatment regarding his eye care.  (*Id.*, PageID #7.)  The five Defendants affiliated with the Ohio Department of Rehabilitation and Correction move to dismiss.  (ECF No. 14.)  Although Plaintiff filed suit on January 29, 2025, he has yet to perfect service on Dr. Julianne Matthews.  (ECF No. 7; ECF No. 8.)

## ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint," and is "not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  But a pleading must offer more than mere "labels and conclusions," and "a formulaic

recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth).  A plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), litigants who do not have a lawyer are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## I.     Statute of Limitations

Courts may grant motions to dismiss based on an applicable statute of limitations only if "the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). Section 1983 itself does not provide a statute of limitations. In such circumstances, federal courts borrow the applicable limitations period from the most analogous one available under State law. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989). Here, the most closely analogous limitations period under Ohio law is the general two-year limitations period for bringing a tort action. *See* Ohio Rev. Code § 2305.10; *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).

When a cause of action under Section 1983 accrues presents "a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In *Wallace*, the Supreme Court recognized "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)) (cleaned up).

The "continuing violation" doctrine permits courts to "consider as timely all relevant violations 'including those that would otherwise be time-barred.'" *National Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to

acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Sixth Circuit has extended this reasoning to Section 1983 claims. *Sharpe*, 319 F.3d at 267 (determining that there was "no principled basis upon which to restrict *Morgan* to Title VII claims," and concluding that "the Supreme Court's reasoning must be applied to . . . § 1983 claims").

In *Bruce v. Correctional Medical Services, Inc.*, 389 F. App'x 462, 466 (6th Cir. 2010), the defendant denied the plaintiff surgery for his hip and knee on multiple occasions from 2003 to 2007 while the plaintiff was incarcerated. However, the Sixth Circuit determined that the "[a]ctual actions by [the defendant] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations," notwithstanding the continuing violation doctrine. *Bruce*, 389 F. App'x at 466–67. So too here. According to his allegations, Mr. Smith was found ineligible for surgery on multiple occasions, starting in June 2016. (ECF No. 1, ¶¶ 12, 16, 21, PageID #3–4.) Because Plaintiff filed this action on January 29, 2025, any of the previous discrete acts denying medical care that accrued before January 29, 2023 are time-barred.

Defendants move to dismiss, arguing that the statute of limitations bars any of Plaintiff's claims which accrued before January 29, 2023. (ECF No. 14, PageID #87–88.) Plaintiff argues that his earlier claims are not time-barred because "[t]he sole purpose of [Defendants] prescribing multiple eyeglasses was to attempt to pretend that some form of 'treatment' was offered, when, in fact, none was." (ECF No. 15, PageID #96.) Still, each previous denial of medical care constitutes a discrete

act as a matter of law for purposes of the statute of limitations. *Bruce*, 389 F. App'x at 466–67.

Plaintiff cites *Kovacevich v. Kent State University*, 224 F.3d 806, 829 (6th Cir. 2000), to argue that all allegedly unconstitutional acts may be challenged if one falls within the limitations period. (ECF No. 15, PageID #96.) But *Kovacevich* dealt with employment discrimination claims and predated *Sharpe*, which determined that "[p]revious 'continuing violation' law must be reexamined in light of the Supreme Court's recently imposed limits on the viability of the doctrine." *Sharpe*, 319 F.3d at 267. In other words, *Kovacevich* was decided before *Sharpe* extended to Section 1983 claims the determination in *Morgan* that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. Plaintiff also relies on *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 376–77 (6th Cir. 2002), which suffers from the same defect. Therefore, the relevant statute of limitations bars any claims in the first twenty-four paragraphs of Plaintiff's complaint, which all accrued before January 29, 2023.

## II.    Plaintiff's Section 1983 Claims

Plaintiff alleges that Defendants are liable in their official and individual capacities under Section 1983 for alleged violations of his First, Eighth, and Fourteenth Amendment rights. (ECF No. 1, ¶¶ 1–3 & 35–39, PageID #2 & #6–7.) Although Plaintiff alleges several of these constitutional violations generally without providing much of a connection between his treatment at Grafton Correctional and the violations of his rights, the Court construes Plaintiff's *pro se* complaint liberally. *See Martin*, 391 F.3d at 712.

10

To state a claim under Section 1983, Plaintiff must allege:  (1) "a right secured by the United States Constitution;" and (2) "the deprivation of that right;" (3) "by a person acting under color of state law."  *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (abrogated on other grounds)).  Defendants argue that Plaintiff fails to state a claim on which the Court may grant relief on all claims against them.  (ECF No. 14, PageID #86–92.)

### II.A.  Supervisory Liability

To state a claim against a governmental official in his individual-capacity, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights."  *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).  "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  In other words, a supervisor or other governmental official is not vicariously liable for the violations of a person's civil rights that another commits.  To state a claim under Section 1983 for the violation of a civil right, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Liability must be based on each defendant's own "active unconstitutional behavior."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).  The plaintiff must allege facts suggesting that each defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the [challenged action]."  *Id.*

At the very least, the individual defendant must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)).  A defendant must have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 355 (quoting *Phillips*, 534 F.3d at 543).  To prevail on an individual supervisory liability claim under Section 1983, a plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  "[A] supervisor's failure to act, without more, is insufficient to establish supervisory liability." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio 2020) (citing *Peatross*, 818 F.3d at 241).  Mere failure to act cannot establish individual liability.  *Essex*, 518 F. App'x at 355 (6th Cir. 2013) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).

Several of Plaintiff's claims fail to establish whether various Defendants who are officers or employees of the Ohio Department of Rehabilitation and Correction played any personal role in the alleged violations of Mr. Smith's civil rights.  Plaintiff alleges that Ms. Chambers-Smith, the Department's Director, and Mr. Spatny, the warden of Grafton Correctional, "acted with neglect and deliberate indifference in failing to make or enforce policies consistent with [Plaintiff's] medically necessary eye care recommended by multiple optometrists."  (ECF No. 1, PageID #7.)

Defendants cannot be held liable "solely in their supervisory capacity with overall responsibility for enforcing policies at the Ohio Department of Rehabilitation and Corrections." *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *3 (N.D. Ohio July 19, 2019). Further, allegations that these Defendants were aware of any alleged incidents or misconduct fail, as a matter of law, to give rise to supervisory liability. *Hollis*, 480 F. Supp. 3d at 833 (citing *Peatross*, 818 F.3d at 241). In *Hollis*, the court determined that the warden in that case was not liable under Section 1983 in part because the plaintiffs had merely alleged that the warden had failed to act, which was "not enough." *Id.* at 834. Specifically, the court determined that the mere allegation that "the Warden generally knew of a potential risk that could potentially result in harm of some kind at some point in time, and should have done more to prevent that possible harm," was "not enough for personal liability." *Id.* at 835–36. Further, "[t]he 'denial of administrative grievances or the [mere] failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff has not pled that any of these Defendants "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct." *Hollis*, 480 F. Supp. 3d at 835 (quoting *Phillips*, 534 F.3d at 543).

In his opposition, Plaintiff attempts to clarify that Ms. Chambers-Smith and Mr. Spatny "are named as defendants for the sole purpose of being responsible for carrying out the injunctive relief sought herein, once granted by this Court" and that "none of these defendants are being named solely in their non-acting supervisory

roles." (ECF No. 15, PageID #97.) That statement concedes that Ms. Chambers-Smith and Mr. Spatny have no personal involvement in the alleged deprivation of Mr. Smith's constitutional rights. *Frazier*, 41 F. App'x at 764. Without any allegation of personal involvement, such individual-capacity claims under Section 1983 cannot survive. *Id.* To the extent that Plaintiff brings a claim for supervisory liability against Ms. Burger, such a claim fails regarding the allegation that she "fail[ed] to ensure medical care consistent with [Plaintiff's] medically necessary eye care." (ECF No. 1, PageID #7.) Such an alleged failure to act cannot survive for supervisory liability purposes. *Grinter*, 532 F.3d at 576 (citing *Shehee*, 199 F.3d at 300).

Taking the allegations of the complaint as true, the Court concludes, as a matter of law, that Plaintiff fails to state a claim for supervisory liability against Ms. Chambers-Smith, Mr. Spatny, or Ms. Burger. As a result, Plaintiff fails to state any personal capacity claim against Ms. Chambers-Smith or Mr. Spatny.

## II.B. Deliberate Indifference

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The Eighth Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency' against which courts must evaluate penal measures." *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (quoting *Estelle*, 429 U.S. at 102).

To succeed on such a claim, Plaintiff must meet an objective as well as subjective test. *Blackmore*, 390 F.3d at 895 (citing *Farmer v. Brennan*, 511 U.S. 825,

834 (1994)).  The objective test requires Plaintiff to "plead facts which, if true, establish the existence of a 'sufficiently serious' medical need." *Reilly*, 680 F.3d at 623 (quoting *Blackmore*, 390 F.3d at 895).  Defendants do not contend that Plaintiff's complaint fails to satisfy the objective test that his cataracts constitute a "serious medical need." *Id.*  In any event, the Sixth Circuit has determined that cataracts requiring surgery constitute a "serious medical need." *Cobbs v. Pramstaller*, 475 F. App'x 575, 580 (6th Cir. 2012).

For the subjective test, Plaintiff "must demonstrate Defendants acted with 'a sufficiently culpable state of mind in denying medical care.'" *Reilly*, 680 F.3d at 623 (quoting *Blackmore*, 390 F.3d at 895).  A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Further, "[m]ore than ordinary negligence or medical malpractice is needed" to state a claim for deliberate indifference. *Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 870 (6th Cir. 2019) (quoting *Farmer*, 511 U.S. at 835).  Plaintiff "'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Id.* Defendants argue that Plaintiff's complaint does not satisfy the subjective test because it fails to establish "an act by a Defendant that indicates, even inferentially, that they intended to punish the Plaintiff."  (ECF No. 14, PageID #89–91.)  The Court

15

applies this subjective test to the actions of each individual Defendant based on the allegations in the complaint.

### II.B.1. Health Care Administrator Burger

Defendants contend that "Plaintiff alleges no action by Berger [*sic*] that can be considered deliberate indifference." (ECF No. 14, PageID #89.)  Plaintiff alleges that Ms. Burger's attempt "to give him glasses instead of the medically necessary surgery was motivated by deliberate indifference," and that Ms. Burger, "after being informed of the recommendation that Plaintiff needed surgery in his left eye, "notified Plaintiff that he would not receive the medically necessary surgery but would instead receive further monitoring." (ECF No. 1, ¶¶ 28 & 31, PageID #5–6.)  Further, Plaintiff claims that Ms. Burger told him that "she would get back to him the next day as to why new useless prescriptions are being filled when it is clear they will not resolve the problem." (*Id.*, ¶ 33, PageID #6.)  According to Plaintiff, however, she never did.

Plaintiff's claim that Ms. Burger was motivated by negligence or deliberate indifference in these instances is conclusory, and a legal conclusion in any event.  At this stage of the proceedings, the Court takes as true the allegations that Ms. Burger knew of the recommendation for surgery in Mr. Smith's left eye, told Mr. Smith that he would instead receive further monitoring, and did not answer Mr. Smith's question about the alleged futility of his prescriptions. *Eidson*, 510 F.3d at 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

None of these allegations of personal conduct on behalf of Ms. Burger amounts to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Reilly*, 680 F.3d at 624.  "[A] complaint that a physician has been

16

negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.  "In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  Further, "[w]here a prisoner alleges only that medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'" *Id.*

In *Cobbs*, 475 F. App'x at 582, the Sixth Circuit determined that even though the defendants denied surgery for the plaintiff after they were warned by a doctor that the plaintiff needed cataract surgery, the plaintiff "fail[ed] to show that this denial was anything other than the product of considered medical judgment."  In its reasoning, the Sixth Circuit determined that "[d]uring the relevant time period, [the plaintiff] regularly met with ophthalmologists and optometrists," and that the defendants eventually ordered that "doctors monitor the condition." *Id.*  So too here. Plaintiff met with multiple optometrists and doctors regarding his cataracts and had surgery on his right eye.  (ECF No. 1, ¶¶ 12, 14, 16–17, 24–26, 30–33, PageID #3–6.) Instead of an outright denial of treatment, Ms. Burger told Plaintiff that he "would instead receive further monitoring."  (*Id.*, ¶ 31, PageID #5–6.)  Indeed, following this interaction, Plaintiff had an appointment with Dr. Ferguson, the same doctor who recommended eye surgery, who provided him with a prescription.  (*Id.*, ¶ 32, PageID

#6.)  In treating cataracts, a prescription for "an alternate course of treatment, i.e., eye glasses" is evidence that "the defendants have not been deliberately indifferent to plaintiff's medical needs."  *Phillips v. Lindamood*, No. 3:09-1187, 2009 WL 5205379, at *2 (M.D. Tenn. Dec. 23, 2009).

Plaintiff might dispute the adequacy of this treatment (ECF No. 15, PageID #97–99), but it is not the role of the Court to weigh medical considerations in the place of experienced medical professionals.  *Alspaugh*, 643 F.3d at 169; *see also Westlake*, 537 F.2d at 860 n.5.  The question of what type of treatment to apply "is a classic example of a matter for medical judgment."  *Estelle*, 429 U.S. at 107.  "A medical decision not to order . . . [certain] measures, does not represent cruel and unusual punishment," and "[a]t most it is medical malpractice."  *Id.*

Plaintiff relies on *Alford v. Terrell*, No. 1:20-cv-4333, 2020 WL 3969340, at *3 (S.D. Ohio July 14, 2020), for the proposition that "treatment must be so 'woefully inadequate as to amount to no treatment at all' to give rise to a cause of action under § 1983."  There, the court determined that the plaintiff's complaint failed to allege deliberate indifference regarding surgeries for his eyes, in part because he "received some medical attention and the dispute is over the adequacy of the treatment."  *Id.* (citing *Westlake*, 537 F.2d at 860 n.5).  Such is the case here as well, where Mr. Smith received some medical attention for his cataracts and eye problems.  His complaint is with the adequacy of the treatment he received.

For these reasons, Plaintiff fails to state a claim against Ms. Burger.

### II.B.2. Dr. Douglas

Plaintiff alleges that Dr. Douglas's attempt "to give him glasses instead of the medically necessary surgery was motivated by deliberate indifference" and that Dr. Douglas "acted with neglect and deliberate indifference in failing to address Plaintiff's headaches, but rather continued to send him back to the optometrist." (ECF No. 1, ¶¶ 28 & 30–31, PageID #5–7.)

Again, Plaintiff's claim that Dr. Douglas was motivated by negligence or deliberate indifference in these instances is conclusory, and a legal conclusion in any event.  Taking Plaintiff's allegations as true at this stage, there are no allegations of personal conduct on behalf of Dr. Douglas that amount to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Reilly*, 680 F.3d at 624.  At best, Dr. Douglas's alleged failure to address Plaintiff's headaches constitutes negligence.   But the Eighth Amendment does not constitutionalize a claim for medical malpractice, if there was any here.  *See Reilly*, 680 F.3d at 627 (citing *Estelle*, 429 U.S. at 105–06).  In *Reilly*, the *pro se* plaintiff alleged that his doctor in prison failed to "provide timely . . . medical care" and ensure the plaintiff was "evaluated by a physician." *Id.* at 625.  The Sixth Circuit determined that "[t]hese allegations may support a claim for professional negligence, but under established law, deliberate indifference 'entails something more than mere negligence.'" *Id.* (quoting *Blackmore*, 390 F.3d at 895).  So too here.  Because Plaintiff does not allege any facts that support the subjective test that Dr. Douglas disregarded "an excessive risk to inmate health or safety," Plaintiff fails to state a claim against Dr. Douglas.  *Farmer*, 511 U.S. at 837.

19

### II.B.3. Dr. Ferguson

Plaintiff alleges that Dr. Ferguson wrote prescriptions for Plaintiff that did not help his eyesight or alleviate his headaches. (ECF No. 1, ¶ 26, PageID #5.) Further, Plaintiff claims that Dr. Ferguson's attempt "to give him glasses instead of the medically necessary surgery was motivated by deliberate indifference" and that Dr. Ferguson "acted with neglect and deliberate indifference in failing to insure medical treatment consistent with [Plaintiff's] medically necessary eye care as recommended by multiple other optometrists." (*Id.*, ¶ 28, PageID #5 & #7.) Also, Plaintiff alleges that Dr. Ferguson told him that his left eye required surgery and that glasses would not improve Plaintiff's vision, but later issued Plaintiff prescription glasses despite his earlier statement. (*Id.*, ¶¶ 30 & 33, PageID #5–6.)

As previously stated, Plaintiff's claim that Dr. Ferguson was motivated by negligence or deliberate indifference in these instances is conclusory, and a legal conclusion in any event. Taking Plaintiff's allegations as true at this stage, there are no allegations of personal conduct on behalf of Dr. Ferguson that amount to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Reilly*, 680 F.3d at 624. Similar to Ms. Burger and Dr. Douglas, Dr. Ferguson's alleged actions provided Mr. Smith with medical treatment that he deems inadequate. As previously discussed, this does not rise to the level of deliberate indifference to violate the Eighth Amendment. *Alspaugh*, 643 F.3d at 169 (quoting *Westlake*, 537 F.2d at 860 n. 5). These claims might amount to negligence or medical malpractice. *See Reilly*, 680 F.3d at 627 (citing *Estelle*, 429 U.S. at 105–06). But courts are "generally reluctant to second guess medical judgments."

20

*Alspaugh*, 643 F.3d at 169.  Because Plaintiff does not allege any facts that support the subjective test that Dr. Ferguson disregarded "an excessive risk to inmate health or safety," Plaintiff fails to state a claim against Dr. Ferguson.  *Farmer*, 511 U.S. at 837.

**II.C.  Retaliation**

Plaintiff alleges that Defendants denied him "cataract surgery in the left eye . . . [a]s a retaliatory act for complaints related to their medical neglect, and not because of any alleged hidden and/or undocumented one eye cataract surgery policy." (ECF No. 1, ¶ 38, PageID #6.)  Plaintiff claims that these acts violated his First Amendment rights.  (*Id.*)  Further, he cites *Brito v. Houghlen*, No. 1:16-cv-02322 (N.D. Ohio), to allege a "pattern of retaliatory conduct by the Defendants against multiple inmates that goes back years" in order to "put cost savings over the health of Plaintiff."  (*Id.*, ¶ 39, PageID #6.)

To state a claim for First Amendment retaliation, Plaintiff must plead that (1) he engaged in a constitutionally protected activity; (2) Defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of Plaintiff's constitutional rights.  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (citations omitted).

**II.C.1. Constitutionally Protected Activity**

"It is well established that prisoners have a constitutional right to file grievances against correctional employees."  *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see also*

*Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (determining that filing a grievance is protected conduct). But a prisoner's First Amendment right to file institutional grievances without being subject to retaliation "only extends to the filing of non-frivolous grievances." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445–46 (6th Cir. 2005) (citations omitted).

It is unclear what "complaints for medical neglect" Plaintiff refers to in his complaint. (ECF No. 1, ¶ 38, PageID #6.) In one instance, Plaintiff alleges that he was seen by Dr. Ferguson "[a]s a result of Plaintiff's continued complaints." (*Id.*, ¶ 32, PageID #6.) It is not clear whether such complaints in this context were filed grievances or generalized expressions of frustration with prison staff regarding his medical treatment. Later in his complaint, Plaintiff references two complaints that were "never received by the court" on October 9, 2024 and November 13, 2024. (*Id.*, PageID #7–9.) These might be legal complaints that Plaintiff attempted to file with the Court. Liberally construing the allegations to refer to filing grievances (or complaints in court), *Martin*, 391 F.3d at 712, such complaints constitute constitutionally protected conduct, *Pasley*, 345 F. App'x at 984 (citing *Herron*, 203 F.3d at 415).

### II.C.2. Adverse Action

"[T]his Circuit has held that any action that would deter a person of ordinary firmness from exercising protected conduct will suffice" as an adverse action, and "[t]he analysis of this factor must be tailored to the circumstances such that prisoners might have to endure more than public employees." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (citations omitted). Plaintiff does not

allege that any retaliatory conduct deterred him from filing a grievance or continuing to seek treatment. Indeed, the complaint itself demonstrates that Plaintiff continued to make complaints regarding his medical treatment after the denial of his second surgery, which led to at least one additional appointment with Dr. Ferguson in which he received prescription glasses. (ECF No. 1, ¶ 32, PageID #6.) The Court sees nothing in the complaint that the medical judgment of Defendants deterred Mr. Smith or a person of ordinary firmness from raising complaints or seeking treatment. *Fritz*, 592 F.3d at 724. Therefore, Plaintiff fails to state a claim for retaliation.

### II.D. Fourteenth Amendment

Plaintiff generally alleges violations of his Fourteenth Amendment rights in his complaint, stating that the "denial of services violates the United States Constitutional provisions of the fourteenth Amendment Equal Protection and due process under the fourteenth Amendment." (ECF No. 1, ¶¶ 1–3 & 37, PageID #2 & #6.) Further, he claims that "Defendants Spanty [*sic*], Dr. Douglas, S. Ferguson, [and] A. Berger . . . acted in violation of Plaintiff's Constitutional Rights under the . . . Fourteenth Amendment." (*Id.*, PageID #7.)

"Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) (citing *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998)). Further, "[t]he 'Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner.'" *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 478 (6th Cir. 2005)).

"Both pretrial detainees . . . and convicted prisoners have a constitutional right to be free from deliberate indifference to their serious medical needs.  For a pretrial detainee, the right arises under the Fourteenth Amendment, while a prisoner's right comes from the Eighth Amendment."  *Howell v. NaphCare, Inc.*, 67 F.4th 302, 310–11 (6th Cir. 2023) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)).

Plaintiff contends that, in *Farmer v. Brennan*, 511 U.S. 825 (1994), "the Supreme Court held that a prisoner retains due process rights to medical care." (ECF No. 15, PageID #99.)  But the Supreme Court in *Farmer* acknowledged that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer*, 511 U.S. at 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  Therefore, because Plaintiff is a prisoner, he fails to state a claim under the Fourteenth Amendment.

### II.E.  Policy Violations

Plaintiff makes multiple allegations of "negligent care . . . due to an ODRC policy that he had to wait a full year before he would be eligible to return to OSU for a second cataract consultation and surgery" and a "hidden and/or undocumented one eye cataract surgery policy." (ECF No. 1, ¶¶ 23 & 38, PageID #5–6.)  Plaintiff claims that "Defendant's Policy of only allowing one cataract surgery per incarcerated adult when two are medically necessary is deliberate indifference to inmate health." (*Id.*, PageID #7.)  In his opposition, Plaintiff argues that "the defendant has attempted to initiate an unwritten 'one eye' policy (called by some staff members:  'one eye jack'), which, although they admitted to this on paper in the *Brito* case, they actively lied to

Judge Solomon Oliver during oral proceedings, stating that there is no 'one eye policy.'" (ECF No. 15, PageID #94–95.)

To the extent Plaintiff alleges violations of Department policy, "alleged violations of ODRC policy do not state a claim under § 1983" because "Section 1983 does not provide a remedy for violations of state laws or regulations." *Tolliver v. Ohio Dep't of Rehab. & Corr.*, No. 2:22-cv-4567, 2023 WL 2990186, at *8 (S.D. Ohio Apr. 18, 2023) (citations omitted); *see also Brown v. Mahlman*, No. 1:233-cv-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) (dismissing alleged violations of Department policy because they "fall outside the scope of § 1983"). A defendant's "alleged failure to comply with [a State] administrative rule or policy does not itself rise to the level of a constitutional violation." *Tolliver*, 2023 WL 2990186, at *8 (citations omitted). Therefore, none of these alleged violations state a claim under Section 1983.

### II.F.  Official-Capacity Claims

Plaintiff's suit against Defendants in their official capacities is a suit against the State. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hollis*, 480 F. Supp. 3d at 836 (S.D. Ohio 2020) (determining that the warden was a State employee). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suing officials in their official capacities for "acts performed within the scope of [their] authority is equivalent to suing the governmental entity itself." *Graham*, 473 U.S. at 166 (1985).

"For the State of Ohio and ODRC, the Eleventh Amendment provides immunity from suits brought in federal court." *Kirkland v. ODRC*, No. 4:23-cv-00305, 2023 WL 8807240, at *5 (N.D. Ohio Dec. 19, 2023) (citing *Welch v. Texas Dep't of Highways & Publ. Transp.*, 483 U.S. 468 (1987)).  While States may waive their Eleventh Amendment immunity, "Ohio has not done so for cases brought under Section 1983."  *Id.* (citing *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)). Eleventh Amendment immunity "extends to State agents and instrumentalities, like ODRC."  *Id.* (citing *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008)).

Plaintiff argues that the Eleventh Amendment does not protect Defendants because they "do not enjoy immunity for acts committed under color of state law which are committed with deliberate indifference to the serious medical needs of a prisoner." (ECF No. 15, PageID #95.)  But Plaintiff appears to confuse claims against a person in his official capacity with claims against that person in his individual capacity.  *Graham*, 473 U.S. at 165 (distinguishing official capacity and personal capacity and acknowledging that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law").

Further, the cases on which Plaintiff relies do not support his argument.  (ECF No. 15, PageID #95.)  In *Estelle*, 429 U.S. at 106, the Supreme Court discussed how a plaintiff must allege deliberate indifference to serious medical needs to demonstrate a violation of the Eighth Amendment.  But this discussion came in the context of individual capacity claims.  *Estelle*, 429 U.S. at 98–101.  In *Papasan v. Allain*, 478

26

U.S. 265, 277 (1986), the Supreme Court observed that State officials can be sued in their official capacities "only where the underlying authorization upon which the named official acts is asserted to be illegal."  Plaintiff alleges no such authorization here.  Therefore, Plaintiff's Section 1983 claims against these Defendants in their official capacities fail.

## III.    Failure to Serve Dr. Matthews

The record reflects that Plaintiff did not serve Dr. Julianne Matthews.  (*See* ECF No. 7; ECF No. 8.)  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m); *Abel v. Harp*, 122 F. App'x 248, 250 (6th Cir. 2005) (quoting *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

Plaintiff filed his complaint on January 29, 2025.  (ECF No. 1.)  More than 90 days have passed since then but Plaintiff has not served Dr. Matthews.  Although the Court would typically provide Plaintiff with time to obtain service, in this case doing so would be futile.  Like Plaintiff's allegations against Ms. Burger, Dr. Douglas, and Dr. Ferguson, none of Plaintiff's allegations of personal conduct on behalf of Dr. Matthews amount to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Reilly*, 680 F.3d at 624.  The complaint alleges only that Dr. Matthews screened Mr. Smith for cataract surgery, informed him that he had been given the wrong prescription for eyeglasses,

recommended bilateral cataract surgery, and told him to stick to his treatment recommendation.  (ECF No. 1, ¶¶ 17 & 24, PageID #4–5.)

At most, construed in Plaintiff's favor, these claims amount to nothing more than negligence or medical malpractice.  They do not rise to the level of deliberate indifference under the Eighth Amendment.  *Reilly*, 680 F.3d at 627 (quoting *Blackmore*, 390 F.3d at 895).  Because Plaintiff makes no allegation that Dr. Matthews subjectively disregarded "an excessive risk to inmate health or safety," Plaintiff fails to state a claim against Dr. Matthews.  *Farmer*, 511 U.S. at 837.  For these reasons, continuing the case against her is futile, and the Court **DISMISSES** this action against Defendant Dr. Julianne Matthews.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss of the five Defendants associated with the Ohio Department of Rehabilitation and Correction.  (ECF No. 14.)  Further, the Court **DISMISSES** Defendant Dr. Julianne Matthews pursuant to Rule 4(m).

**SO ORDERED.**

Dated:  June 18, 2025

_____
    J. Philip Calabrese
    United States District Judge
    Northern District of Ohio

28